TATEL, Circuit Judge,
concurring:
I write separately to explain why, even absent Weaver, I would conclude that LMRDA section 501 gives unions a cause of action. As I see it, the statute’s text and structure reveal Congress’s intent both to create federal rights and to allow unions to vindicate those rights in federal court. See Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (“The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative.” (internal citation omitted)).
To begin with, section 501(a) creates federal rights. It contains express rights-creating language, specifying that union agents occupy “positions of trust in relation to [the union] and its members as a group,” and that, accordingly, such an agent has a series of specific duties, including “to hold [the union’s] money and property solely for the benefit of the organization and its members,” “to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties,” and “to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.” 29 U.S.C. § 501(a).
To be sure, these duties correspond to state common law fiduciary duties, but their express delineation in a federal statute demonstrates that they reflect separate federal rights. Rather than simply adopting state law or using an unadorned common law term such as “fiduciary duty” without elaboration, section 501 not only lays out the relevant duties in some detail, but does so without any reference to state law. Indeed, the statute itself refers to “the duties declared by this section,” id. (emphasis added), and “the duties declared in subsection (a) of this section,” id. § 501(b) (emphasis added). To see that the statute does not simply incorporate state law, consider a hypothetical state that expressly abolishes all state law fiduciary duties. In such a state, union agents would still owe the union the duties “declared” in section 501(a). Moreover, legislative history indicates that Congress was aware of state fiduciary law, but nonetheless “considered it important to write the fiduciary *976 principle explicitly into Federal labor legislation.” H.R. Rep. 86-741 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2479-80.
To the extent Faye argues that section 501 creates rights only in favor of union members rather than also in favor of the union itself, that argument falls short. The statute specifies that union agents occupy “positions of trust in relation to [the union] and its members as a group,” 29 U.S.C. § 501(a), not in relation to individual members. Moreover, the statute requires that many of the duties it specifies be performed for the union itself, such as the duty “to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with [the agent’s] duties.” Id. (emphasis added). And tellingly, the statute specifies that when union members bring suit under section 501, they do so “for the benefit of the [union].” Id. § 501(b).
Of course, to provide unions an implied cause of action, the statute must not only give them federal rights, but also reveal that Congress intended to give them a private remedy. Section 501 reveals just such an intent. The statute refers to the “refusal or failure by labor organization to commence proceedings,” id. which is most naturally read as suggesting that a union may bring proceedings under the statute. Similarly, the statute allows a suit by a union member “for the benefit of the [union]” only after the union “refuse[s] or fail[s] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so,” id. (emphasis added), further emphasizing Congress’s understanding that unions have the capacity “to sue or recover'damages or secure an accounting or other appropriate relief’ regardless of state law.
Relying on these and other aspects of the statute, courts on both sides of the implied cause of action debate agree that union members’ suits are analogous to shareholder derivative suits. E.g., International Union of Operating Engineers, Local 150, AFL-CIO v. Ward, 563 F.3d 276, 287-88 (7th Cir. 2009) (using the analogy in a case finding an implied cause of action); Building Material & Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 506 (9th Cir. 1989) (using the analogy in a case finding no implied cause of action). But because shareholder derivative suits are brought on behalf of a corporation, such suits are typically allowed only after the corporation itself fails to bring suit on the same claims. See Ward, 563 F.3d at 288 (citing Ross v. Bernhard, 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)). “It would be anomalous indeed,” the Seventh Circuit pointed out, “to read this statutory scheme as remitting the union’s own suit — which is primary under the statutory hierarchy — to state court.” Id. Moreover, this “anomalous” result “would create perverse incentives” for unions to forgo filing suit to “manufactur[e] federal jurisdiction” so that a member could bring a section 501(b) suit in federal court. Id. (internal quotation marks omitted).
Although even Faye, the district court, and the dissent all acknowledge that the statute envisions that unions will have some ability to pursue fiduciary duty claims against their agents directly, they insist that section 501 contemplates suits by unions only in state court for violations of state law. Appellee’s Br. 5-6 (“Congresses] contemplation of a union’s right to sue is, in fact, evident in the language of the statute. ... [I]t is not necessary to look beyond the language [of the statute] to find that the statute does not convey an express or implied private right of action for a union to sue in federal court.”); International Union, Security, Police & Fire Professionals of America v. Faye, 115 F.Supp.3d 40, 45 (D.D.C. 2015) (“Although *977 the statutory language does reveal that Congress contemplated unions bringing suit in some forum, nothing in the statute suggests that Congress thought unions and union members required access to the same forum.”); Dissenting Op. at 986 (“It is true that Congress assumed that unions would be able to bring suit to enforce the fiduciary duties imposed on union officers. But nothing in Subsection (b) suggests that Congress intended to allow unions to bring suit under federal law rather than under state law.”). I disagree.
On this understanding of the statute, Congress intended to give union members a federal cause of action for violation of federal rights, but only when the union itself “refuse[d] or fail[ed]” to obtain relief in state court using state law, which may or may not overlap perfectly with the fiduciary duties imposed by section 501(a). This conception conflicts with the statutory description of the union member’s suit as “for the benefit of the [union],” 29 U.S.C. § 501(b), as well as with the virtually uniform characterization of the union member’s suit as a derivative suit ultimately belonging to the union itself. Far more likely to comport with congressional intent is the reading embraced by the Seventh and Eleventh Circuits. By creating federal rights and an express derivative federal cause of action for union members to bring “for the benefit” of the union — if the union does not itself “commence proceedings”— section 501 reveals Congress’s intent that the union be able to enforce the duties its agents owe it in federal court.
The arguments advanced by Faye and embraced by the district court are unconvincing. First, Faye argues that section 501 must be construed narrowly because it is a jurisdictional statute. As noted above, however, Majority Op. at 971-72, the issue in this case goes to the merits, not jurisdiction.
Faye also argues that in enacting section 501, Congress was concerned that unions were refusing to enforce their rights in state court, not that state law provided unions with inadequate remedies. On this theory, Congress designed the statute to benefit union members suffering from union corruption, and we should therefore not read it to give the union itself a federal cause of action. See also Dissenting Op. at 985-87. Faye is correct that Congress recognized that state common law remedies were available to unions. But Congress apparently found these remedies inadequate and chose to address the problem in a particular way: by declaring federal duties the union agents owed the union and creating a federal remedial scheme that includes a derivative-like suit. Such a scheme obviously depends for its coherence on the ability of the union to control the suit that, after all, ultimately belongs to it.
I am also unpersuaded by the arguments advanced by my two colleagues. First, to be sure, as Judge Kavanaugh points out, “ ‘where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.’ ” Id. at 985 (quoting Karahalios v. National Federation of Federal Employees, Local 1263, 489 U.S. 527, 533, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989)); see also Millett Concurring Op. at 980-81. But here, the textual and contextual evidence of statutory intent is strong, and the “additional remed[y]” consists merely of allowing the ultimate owner of a derivative claim to bring suit in its own name.
Similarly, because I read section 501 as reflecting congressional intent to create an implied cause of action, I am untroubled that Congress also discussed “labor organization[s]” in various other provisions of the statute. Likewise, the inclusion of procedural prerequisites for union members *978 bringing suits hardly suggests that unions are powerless to sue. Rather, I read section 501 as a whole as reflecting an intent to give unions an implied cause of action and the section 501(b) prerequisites as designed to prevent union members from hijacking lawsuits that unions themselves are willing to pursue. See International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham, 97 F.3d 1416, 1421 (11th Cir. 1996) (“Here, section 501(b) clearly shows that it has not one, but two purposes: first, to enable individuals to sue on the union’s behalf, and second, to make sure that individuals do not preempt a union’s right to prosecute its own claims.”). This conclusion applies with equal force to the potentially jurisdictional statutory prerequisite that union members receive leave of court “for good cause shown” prior to bringing suit.
Finally, Judge Millett worries that “[allowing the union itself to take over enforcement of Section 501 rights would put back into the union’s hands the very authority Congress sought to confer on individual members, and would empower corrupt unions to throw the Section 501 litigation or enter into sweetheart settlements.” Millett Concurring Op. at 981. But that concern seems difficult to square with Congress’s willingness to allow unions to foreclose suits by their members by “eommenc[ing] proceedings” when requested. In other words, on any reading of the statute, Congress gave unions significant leeway to preempt fiduciary duty suits by their members. And even if Judge Millett is correct that “Section 501(b)’s ‘good cause’ standard protects the union member’s right to bring a federal suit to enforce federal rights if litigation shenanigans by the union in state court trenched upon the rights and duties declared by Section 501(a),” id. at 981 n. 2, then the same standard would seem to protect against “litigation shenanigans” in federal court.
In sum, interpreting section 501 holistically and with due regard to both its text and its remedial structure, I am convinced that in enacting the LMRDA, Congress intended to allow the union to itself bring suit for violation of the federal rights Congress “declared” in section 501(a).
One final note. Faye’s reading of the statute becomes even less tenable when this court’s interpretation of section 501 in Weaver is layered on top of it. Even if Weaver did not control here, it holds at least that a union may take over a suit properly brought by a union member under section 501. Faye’s position would thus suggest that the union has no ability to bring a federal suit in the first instance, but could displace its members and proceed to litigate the members’ suit against its agents in federal court. I would not read section 501 as creating such a coun-terintuitive scheme.