KAVANAUGH, Circuit Judge,
dissenting:
The Security, Police & Fire Professionals of America is a labor union that represents security personnel throughout the United States. From 2004 to 2009, the Union employed Assane Faye as the District Director of its office in Washington, D.C. The relationship did not go well. The Union contends that Faye was not a loyal union officer. According to the Union, Faye endeavored to establish a rival union and misused the Union’s resources to achieve that goal.
The Union sued Faye in U.S. District Court for violating his fiduciary duties to the Union. The Union sued under the federal Labor-Management Reporting and Disclosure Act and under D.C. law. According to Faye, however, the federal Act does not create a cause of action for a union to sue its former officer. Faye argued that the Union therefore could sue him only under D.C. law. The District Court agreed with Faye.
The majority opinion reverses the judgment of the District Court and allows the Union to maintain its federal claim against Faye: I respectfully dissent because unions do not possess a federal cause of action to sue their officers for breaches of fiduciary duties.
I
A
In 1959, Congress passed and President Eisenhower signed the Labor-Manage *984 ment Reporting and Disclosure Act. See 29 U.S.C. § 401 et seq. Congress was concerned about growing instances “of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct” on the part of union officers. Id. § 401(b). By enacting this statute, Congress sought to deter those problems, in part by making corrupt union officers civilly liable to union members.
Section 501 of the Act sets forth the civil liability scheme. Subsection (a) of Section 501 imposes fiduciary duties on “officers, agents, shop stewards, and other representatives” of the union. Id. § 501(a). (I will use the term “officers” to refer collectively to those individuals.) Under the Act, union officers must manage the “money and property” of the union “solely for the benefit of the organization and its members.” Id. The union officers must also remain loyal to the union and refrain from any self-dealing. See id.[1]
Subsection (b) of Section 501 gives individual union members a federal cause of action in order to enforce the fiduciary duties created by Subsection (a). Any “member of the labor organization” may sue a union officer violating Subsection (a) “in any district court of the United States” in order “to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.” Id. § 501(b).[2]
Because suits brought by union members under Subsection (b) are “for the benefit of the labor organization,” id. they are derivative suits. A union member therefore may bring suit under Subsection (b) only after meeting two procedural prerequisites. First, the union member may sue under Subsection (b) only after the *985 union itself “refuse[s] or fail[s] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so.” Id. Second, the union member must acquire “leave of the court obtained upon verified application and for good cause shown.” Id. If a union member meets those procedural prerequisites, Subsection (b) provides the union member a cause of action to file suit against a union officer.
But Subsection (b), by its terms, does not give a union — as opposed to union members — a cause of action. That statutory silence has precipitated a circuit split. The Seventh and Eleventh Circuits have held that unions have an implied cause of action under Section 501. International Union of Operating Engineers, Local 150 v. Ward, 563 F.3d 276 (7th Cir. 2009); International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham, 97 F.3d 1416 (11th Cir. 1996). The Ninth Circuit, by contrast, has held that unions do not have an implied cause of action under Section 501. Building Material and Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500 (9th Cir. 1989). This case requires us to enter the fray.
B
“Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress,” not the Judicial Branch. Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Courts must therefore be “reluctant” to “provide a private cause of action where the statute does not supply one expressly.” Sosa v. Alvarez-Machain, 542 U.S. 692, 727, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Courts may find an implied cause of action only if they determine that the statute “displays an intent to create not just a private right but also a private remedy.” Sandoval, 532 U.S. at 286, 121 S.Ct. 1511.
Applying the Supreme Court’s precedents regarding implied causes of action, I would conclude that Section 501 does not create an implied cause of action for unions.
To begin with, the text is clear. Subsection (b) of Section 501 creates a cause of action for union members. It does not create a cause of action for unions.
Indeed, the text of Section 501 strongly suggests that Congress did not want unions to have a federal cause of action. It is “an ‘elemental canon’ of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.” Karahalios v. National Federation of Federal Employees, Local 1263, 489 U.S. 527, 533, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) (citation omitted); see also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19-20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). After all, “express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.” Sandoval, 532 U.S. at 290, 121 S.Ct. 1511.
Here, Congress chose to create a cause of action, but only for union members and not for unions. That decision strongly suggests that Congress intended to allow union members — and only union members— to sue under Section 501. We should respect that congressional choice.
To be sure, some broader conceptions of statutory intent take account not just of the text of the statute, but also of legislative history. But here, the legislative history supplies zero indication that Congress wanted to create a federal cause of action for unions.
*986 As Judge Millett’s concurrence explains in convincing detail, moreover, other contextual indications in this statutory scheme make it all but “impossible to shoehorn union-plaintiffs into the statute as Congress wrote it.” Millett Concurring Op. at 980-81. Notably, as far as anyone is aware, the Supreme Court has never found an implied cause of action for one party to sue under a particular statute when Congress expressly created a cause of action for another party to do so. We should not start now.
With no text and no legislative history to support its argument, the Union relies heavily on the fact that union members may not bring suit under Subsection (b) until the union has refused or failed to do so itself. Subsection (b) therefore assumes that a union could have brought suit. According to the Union, Congress therefore must have intended to give unions a federal cause of action to enforce Section 501. See also Ward, 563 F.3d at 287-88.
But the conclusion does not follow from the premise. It is true that Congress assumed that unions would be able to bring suit to enforce the fiduciary duties imposed on union officers. But nothing in Subsection (b) suggests that Congress intended to allow unions to bring suit under federal law rather than under state law. When Congress enacted Section 501, it knew that unions already had state-law causes of action available to them. See Tatel Concurring Op. at 977; see also H.R. Rep. No. 86-741, at 81 (1959) (supplementary views). But at the time, the States generally did not provide causes of action to union members in order for them to sue corrupt union officers. See S. Rep. No. 86-187, at 72 (1959) (minority views); Statham, 97 F.3d at 1420. That disparity generated a problem: Although unions could sue their officers under state law, the unions were sometimes choosing not to do so for corrupt reasons — in part because the officers of the union usually determined whether a union should sue. See generally Phillips v. Osborne, 403 F.2d 826, 828-29, 831-32 (9th Cir. 1968). And union members had no recourse because, as noted above, they generally could not sue the union officers under state law. To solve that problem, Congress enacted a new statute affording union members a federal cause of action to sue crooked union officers when a union itself would not. But Congress did not need to allow unions to sue under federal law because unions, unlike union members, already could bring suit against union officers under state law. And so Congress did not need to — and did not — create a new federal cause of action for unions.
Sticking to the statute as Congress wrote it does not leave unions without remedies. To reiterate, they have state-law remedies. This suit demonstrates as much. In addition to the federal claim, the Union brought a host of other claims against Faye under D.C. law. Those claims include conversion and breach of contract, along with a claim for breach of fiduciary duties imposed by D.C. law. See Complaint at 4-6, International Union, Security, Police and Fire Professionals of America v. Faye, No. 09-2229 (D.D.C. Nov. 24, 2009), at Joint Appendix 8-10. In other words, even without a federal cause of action under Section 501, unions can still hold union officers accountable, including in this very case, but the unions must do so under state law.
Creating a federal cause of action for unions may or may not be “desirable” as a matter of policy. Sandoval, 532 U.S. at 287, 121 S.Ct. 1511. But Congress did not create one in the Labor-Management Reporting and Disclosure Act, and we must respect Congress’s policy choice.
*987 II
The majority opinion sidesteps the merits of the Union’s argument. Instead, the majority opinion says this Court already decided the issue in Weaver v. United Mine Workers of America, 492 F.2d 580 (D.C. Cir. 1973) (per curiam). In so ruling, the majority opinion ventures far beyond both the arguments of the parties in this case and the holding of Weaver itself.
To start, even the Union here does not rely on Weaver to support its arguments. Think about that. In its opening brief, the Union did not rely at all on Weaver. See Union Br. 13. At oral argument, the Union was offered Weaver on a silver platter. See Tr. of Oral Arg. at 8. But the Union declined to indulge. In no uncertain terms, the Union said it would be too much of a reach to argue that Weaver had any relevance here: “[Gjiven th[e] rather unique circumstance of that case,” the Union explained at oral argument, Weaver “does not directly address the issue before this Panel.” Tr. of Oral Arg. at 8-9. Again, remember that this was the Union speaking. Even the Union did not think it could make a good argument that Weaver controlled this case.
The Union expressly waived reliance on Weaver for good reason. As the Union acknowledged in its brief and at oral argument, the facts in Weaver presented a far different set of legal issues, and the Weaver Court quite plainly did not address much less resolve the question now before us.
Weaver involved a Section 501 suit brought by Joseph Yablonski, a member of the United Mine Workers of America. Weaver, 492 F.2d at 581-82. Yablonski believed that the union’s senior officers had been misappropriating union funds. Id. at 582. So along with other members of the union, Yablonski sued three union officers and the union itself under Subsection (b) of Section 501. Id. at 581-82. Simple enough. But Yablonski and his family were murdered on the order of the union’s president before the court could reach the merits of Yablonski’s suit. Id. at 582; see also Commonwealth v. Boyle, 498 Pa. 486, 447 A.2d 250 (1982).
That created a potential problem for the pending suit. Of the plaintiff union members in the suit, only Yablonski had met the procedural demand requirement for suit under Subsection (b). Weaver, 492 F.2d at 582. So the defendant union officers and union moved to dismiss the suit, arguing that the remaining plaintiffs were not proper plaintiffs. Id. The District Court denied the motion, and the defendant union officers and union filed interlocutory appeals. Id.
While the appeals were pending, the union held a new election, and control of the union flipped: The election displaced the incumbent officers and ushered Ya-blonski’s supporters into power. Id. at 582-83. With its newly elected officers at the helm, the union asked this Court (i) to withdraw the union’s appeal, in which the union had been aligned with the old defendant union officers, and (ii) to permit the union to now intervene on behalf of the plaintiff union members against the old defendant union officers. See id. at 583.
The question before the Weaver Court was thus a narrow one: Generally speaking, could a union start on one side of a Section 501 case and then — midway through — switch to the other side? See id. at 586. Weaver held that a union could do so. Id. at 586-87. In a brief discussion, the Court noted that the union had chosen “to assume a defensive role” in the suit initially, and that the defendant officers wanted this Court to “compel the [union] to maintain [that] defensive role.” Id. at 586. But the Court declined to force the union to stick to its original position, noting that the union was “at liberty to shape its own *988 destiny within the boundaries set by law.” Id. The Court held that “like any labor organization,” the union “is free to say which side of a controversy involving a legitimate institutional interest it will take.” Id.
Importantly for present purposes, Weaver completely missed (and thus said nothing about) the issue of whether Section 501 creates an implied cause of action for unions.[3] Weaver did not cite any precedent related to finding implied causes of action. Nor did Weaver purport to analyze whether the union in that case could have brought a Section 501 claim in the first instance. Indeed, Weaver did not mention Section 501 at all other than a passing reference to the “legislative preference” for unions themselves to prosecute claims “for breach of fiduciary duty against union officials.” Id. That silence should not be surprising: As the Union in this case observes, the Court in Weaver “took for granted that the Union was a proper party.” Union Br. 13. Therefore, as the Union here concedes, “the decision in Weaver turned on an issue of civil procedure, not an interpretation of § 501.” Id.
The majority opinion extracts a different lesson from Weaver. With considerable understatement, the majority opinion acknowledges that “Weaver did not squarely address the precise question of a union’s right to bring a section 501 suit in the first instance.” Maj. Op. at 974. But the majority opinion nonetheless claims that Weaver “compels the conclusion” that a union may bring suit under Section 501. Id. The majority opinion reasons that by “allowing the union to take over control of the litigation, the Weaver court necessarily determined that the union was a proper plaintiff in a section 501 fiduciary duty suit.” Id. at 974.
Weaver said nothing of the sort. Simply put, the Weaver Court missed a critical issue, presumably because the parties (in particular, the defendant union officers) failed to notice and raise it and because the issue was not the kind of jurisdictional issue that courts must raise on their own. It therefore is entirely mistaken to think that the Weaver Court had any thoughts or made any rulings on the issue before us. The majority opinion’s contrary conclusion contravenes a longstanding principle of judicial precedent: “Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.” La-Shawn A. v. Barry, 87 F.3d 1389, 1395 n. 7 (D.C. Cir. 1996) (en banc); see also United States v. Shabani, 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).
For its part, Judge Millett’s concurrence says that the question presented here was “[ajsked and answered by Weaver.” Millett Concurring Op. at 979. That is doubly mistaken, in my view. Review of the Weaver opinion reveals that this question was neither asked nor answered. The court simply missed the issue. That happens sometimes. Even in our court. Cf. Dietz v. Bouldin, — U.S. -, 136 S.Ct. 1885, 1896, 195 L.Ed.2d 161 (2016) (“All judges make mistakes. (Even us.)”). I would not impute to the Weaver Court rulings that it quite obviously never made.
This Court’s decision in Weaver does not control the outcome of this case, as even the Union has conceded. To come to the contrary conclusion, the majority opinion has not only re-engineered Weaver, but also jumped past the Union’s commend *989 able, good-faith candor in refusing to rely on that inapposite case. Because Weaver does not control here and because Section 501 does not create a cause of action for unions, I would affirm the judgment of the District Court dismissing the Union’s federal cause of action. I respectfully dissent.[4]

. Subsection (a) reads in full: “The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.”

. Subsection (b) reads in full: "When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

. It is unclear why the union rather than the union officers was originally a proper defendant in a case of this sort, much less a proper plaintiff after the switch. But neither question was addressed in the multi-stage litigation.

. The District Court dismissed for lack of subject matter jurisdiction. As the majority opinion notes, because the Union has an arguable cause of action, our inquiry "goes to the merits, not jurisdiction.” Maj. Op. at 972; see also Lexmark International, Inc. v. Static Control Components, Inc.,-U.S.-, 134 S.Ct. 1377, 1387 n. 4, 188 L.Ed.2d 392 (2014). But when a district court dismisses for lack of subject matter jurisdiction, this Court can "nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).” Trudeau v. FTC, 456 F.3d 178, 187 (D.C. Cir. 2006). I would do so here.