# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 9, 2016          Decided July 15, 2016

No. 15-7084

INTERNATIONAL UNION, SECURITY, POLICE AND FIRE
PROFESSIONALS OF AMERICA,
APPELLANT

v.

ASSANE FAYE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02229)

*James M. Moore* argued the cause for appellant. On the briefs were *Scott A. Brooks* and *Matthew J. Clark*. *Anton G. Hajjar* entered an appearance.

*Jonathan G. Axelrod* was on the brief for *amicus curiae* District of Columbia Nurses Association in support of appellant.

*Eden Brown Gaines* argued the cause and filed the brief for appellee.

Before: TATEL, KAVANAUGH, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Concurring opinion filed by *Circuit Judge* TATEL.

Concurring opinion filed by *Circuit Judge* MILLETT.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

TATEL, *Circuit Judge*: The Labor-Management Reporting and Disclosure Act sets out fiduciary duties that officers and other agents of unions owe the union that employs them. It also permits a union member to bring a lawsuit for breach of those duties in federal court "for the benefit of the labor organization," but only after "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so." 29 U.S.C. § 501(b). The statute does not, however, expressly give the union itself a cause of action for breach of fiduciary duty in federal court. In this case, we must decide whether the statute contains an implied cause of action for the union itself. Our decision on a closely related issue in *Weaver v. United Mine Workers of America*, 492 F.2d 580 (D.C. Cir. 1973) (per curiam), requires that we answer that question in the affirmative.

## I.

Until September 24, 2009, Assane Faye was a non-member employee of the International Union, Security, Police and Fire Professionals of America (the "Union"). The Union brought this suit alleging that while it employed him, Faye breached his fiduciary duties to the Union in a number of ways, including by encouraging union members to join a rival union. Specifically, the Union alleged that Faye breached his fiduciary duties under section 501 of the federal Labor-

Management Reporting and Disclosure Act (LMRDA). The Union also asserted similar claims under state law, as well as a breach of contract claim under the Labor Management Relations Act (LMRA).

After several rounds of briefing, the district court concluded that the LMRDA provides a cause of action only to individual union members, not to the union itself, and that the LMRA provides no cause of action to a union seeking to sue a non-member employee. The district court concluded that because neither federal statute provided the Union with a cause of action, it lacked federal question jurisdiction over the case. And because no other ground for subject matter jurisdiction existed, the district court ruled that it had "no basis to exercise supplemental jurisdiction over plaintiff's state common law claims." *International Union, Security, Police & Fire Professionals of America v. Faye*, 115 F. Supp. 3d 40, 47 (D.D.C. 2015). The district court thus dismissed the Union's entire suit without prejudice for lack of subject matter jurisdiction.

The Union now appeals, contending that the LMRDA gives it a cause of action and that the district court thus also has supplemental jurisdiction over its state law claims. The Union offers no challenge to the district court's dismissal of its LMRA claim. Our review is de novo. *See El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014) ("We review *de novo* the District Court's dismissal of claims for want of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).").

## II.

This case presents a single substantive issue: whether LMRDA section 501 provides a union with a federal cause of

action against its agent for breach of a fiduciary duty owed to the union. This question has been reserved by the Supreme Court, *see Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 374 n.16 (1990), and is already the subject of a circuit split, *compare Building Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500 (9th Cir. 1989) (finding no implied cause of action), *with International Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276 (7th Cir. 2009), *and International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416 (11th Cir. 1996) (finding an implied cause of action).

Before proceeding to the merits, we pause to clarify the nature of our inquiry. As noted above, the district court concluded that it lacked subject matter jurisdiction because the LMRDA gives the Union no cause of action. Earlier decisions likewise tended to speak of the inquiry in jurisdictional terms. *See, e.g.*, *Guidry*, 493 U.S. at 374 n.16 (speaking in jurisdictional terms in the course of reserving the issue); *Traweek*, 867 F.2d at 505 (treating the matter as jurisdictional).

The Supreme Court has recently made clear, however, that the question whether the plaintiff has a cause of action is distinct from the question whether a district court has subject matter jurisdiction. In *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510–16 (2006), the Court held that the fact that the defendant did not employ the number of employees statutorily required to hold it liable under Title VII went to the merits, not jurisdiction. And in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 n.4 (2014) (quoting *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 642–43 (2002)), the Court wrote that "'the absence of a valid (as opposed to arguable) cause of

action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'" Here, as in *Lexmark*, the plaintiff's claim is at least "arguable," regardless of whether it is "valid." Our inquiry thus goes to the merits, not jurisdiction, which exists under the general federal question jurisdiction statute, 28 U.S.C. § 1331. *See District of Columbia Nurses Ass'n v. Brown*, No. 15-203, 2016 WL 29252, at \*1–2 (D.D.C. Jan. 4, 2016) (reaching the same result).

In determining whether an implied cause of action exists, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (internal citation omitted). Absent statutory intent to create a cause of action, none exists, and "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Congress enacted the LMRDA in 1959 in response to various union corruption scandals and an associated congressional investigation. *See* 29 U.S.C. § 401(b) (explaining that Congress had found "a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct"). The LMRDA provision at issue in this case contains two relevant subsections. The first, section 501(a), bears the title "Duties of officers; exculpatory provisions and resolutions void," and provides as follows:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy

positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

*Id.* § 501(a). The second, section 501(b), bears the title, "Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses," and provides as follows:

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or

recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

*Id.* § 501(b).

The statute thus gives *union members* an express federal cause of action against a union agent for breach of the fiduciary duties set forth in section 501(a). Union members may bring such a suit "for the benefit of the [union]," provided that they first satisfy certain procedural requirements. Central to this case, however, nothing in the statute expressly gives *the union itself* such a cause of action.

In assessing whether a union nonetheless has an implied cause of action under section 501, we do not write on a clean slate. In *Weaver v. United Mine Workers of America*, 492 F.2d 580 (D.C. Cir. 1973) (per curiam), this court faced issues closely related to those presented here. There, relying on

section 501's express cause of action, union members sued union officers, as well as the union itself. *Id.* at 582. Only one of the plaintiff union members, however, had satisfied the statutory procedural requirements before bringing suit, and that plaintiff was murdered while the case was pending. *Id.* The defendants, including the union, moved to dismiss on the ground that none of the remaining plaintiffs had satisfied the statute's procedural requirements. *Id.* The district court denied these motions, but certified them for interlocutory review. *Id.* at 582 & n.8.

While the appeal was pending, a union election occurred, and control shifted to new officers supported by and supportive of the plaintiffs (including some of the plaintiffs themselves). *Id.* at 582–83. The union then filed motions to withdraw its appeal, to intervene on behalf of the plaintiff union members, and to dismiss the appeal filed by the defendant officers as moot in light of the union's intervention as a plaintiff. *Id.* at 583.

This court granted the union's motions and directed the district court to permit the union to realign as a party plaintiff. In doing so, the court analogized union member suits under section 501 to shareholder derivative suits. *Id.* at 586. The court noted that the union "possesses exclusively the financial interest at stake," and that, accordingly, "although under its former leadership the [union] was aligned as a defendant[,] . . . the litigation since its commencement has in reality been its own." *Id.* at 585. "Moreover, in conditioning the availability of a derivative action under Section 501 on the refusal of a union to bring the action itself, Congress expressed its preference that the union prosecute a claim for breach of fiduciary duty against union officials." *Id.* at 586 (internal citation omitted). Because "[a]llowing the [union] to assume the prosecution of this cause would further that

legislative preference," the court concluded, the union "must be accorded that right." *Id.* This court conceptualized the union as fully taking over control of the litigation and displacing the plaintiff union members, as demonstrated by its "understanding that the [union-member plaintiffs] will move the District Court for leave to be dropped as party-plaintiffs," *id.* at 587 n.35, as well as by its dismissal as moot of the defendant officers' appeal challenging the remaining plaintiff union members' failure to comply with the statute's procedural requirements, *id.* at 587.

*Weaver* thus holds, at least, that where union members have properly sued under section 501, the union itself may take control of the suit and displace the union members. In this case, the district court distinguished *Weaver* on the ground that the opinion "did not address a union's right to initiate suit on its own behalf." *Faye*, 115 F. Supp. 3d at 44 n.2. The district court and we are bound, however, "not only [by] the result" of a prior case, "but also [by] those portions of the opinion necessary to that result." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996). In allowing the union to take over control of the litigation, the *Weaver* court necessarily determined that the union was a proper plaintiff in a section 501 fiduciary duty suit. Indeed, in language ignored by the dissent, it emphasized that "the litigation since its commencement has in reality been [the union's] own." *Weaver*, 492 F.2d at 585. Neither the district court nor Faye has offered any persuasive justification for reading the statute to require that a union "be accorded [the] right" to take over a suit that "since its commencement has in reality been its own," *id.* at 585–86, but not to allow the union to simply bring "its own" suit in the first instance. Moreover, the *Weaver* court's dismissal of the individual defendants' appeal as moot necessarily means that it resolved the union's right to litigate a section 501 suit.

Accordingly, although *Weaver* did not squarely address the precise question of a union's right to bring a section 501 suit in the first instance, the reasoning necessary to that decision compels the conclusion that a union may indeed do so. In contrasting a union's ability to litigate under section 501 as an intervening plaintiff with its ability to do so as an original plaintiff, the district court focused on a distinction without a difference. *Weaver* established both that a section 501 suit is properly understood as belonging to the union and that the union is a proper party to litigate it. The question before us—whether section 501 gives a union a cause of action for breach of fiduciary duty—thus did not "'merely lurk in the [*Weaver*] record, neither brought to the attention of the court nor ruled upon.'" *See* Dissenting Op. at 11 (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 n.7 (D.C. Cir. 1996) (en banc)). Rather, *Weaver* answered it in the affirmative. Nor, contrary to the dissent's suggestion, *id.* at 7–8, are we free to ignore our precedent merely because a party incorrectly concedes that it fails to bind us.

The parties' dispute over the Union's state law claims requires much less attention. Because the Union's section 501 claim is properly before the district court, supplemental jurisdiction exists for the Union's state law claims.

### III.

For the foregoing reasons, we reverse the district court's order dismissing the Union's claims under section 501 and state law for lack of subject matter jurisdiction.

*So ordered.*

TATEL, *Circuit Judge*, concurring: I write separately to explain why, even absent *Weaver*, I would conclude that LMRDA section 501 gives unions a cause of action. As I see it, the statute's text and structure reveal Congress's intent both to create federal rights and to allow unions to vindicate those rights in federal court. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative." (internal citation omitted)).

To begin with, section 501(a) creates federal rights. It contains express rights-creating language, specifying that union agents occupy "positions of trust in relation to [the union] and its members as a group," and that, accordingly, such an agent has a series of specific duties, including "to hold [the union's] money and property solely for the benefit of the organization and its members," "to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties," and "to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization." 29 U.S.C. § 501(a).

To be sure, these duties correspond to state common law fiduciary duties, but their express delineation in a federal statute demonstrates that they reflect separate *federal* rights. Rather than simply adopting state law or using an unadorned common law term such as "fiduciary duty" without elaboration, section 501 not only lays out the relevant duties in some detail, but does so without any reference to state law. Indeed, the statute itself refers to "the duties *declared* by *this section*," *id.* (emphasis added), and "the duties *declared* in *subsection (a) of this section*," *id.* § 501(b) (emphasis added). To see that the statute does not simply incorporate state law,

consider a hypothetical state that expressly abolishes all state law fiduciary duties. In such a state, union agents would still owe the union the duties "declared" in section 501(a). Moreover, legislative history indicates that Congress was aware of state fiduciary law, but nonetheless "considered it important to write the fiduciary principle explicitly into Federal labor legislation." H.R. Rep. 86-741 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2479–80.

To the extent Faye argues that section 501 creates rights only in favor of union members rather than also in favor of the union itself, that argument falls short. The statute specifies that union agents occupy "positions of trust in relation to [the union] and its members as a group," 29 U.S.C. § 501(a), not in relation to individual members. Moreover, the statute requires that many of the duties it specifies be performed for the union itself, such as the duty "to refrain from dealing *with such organization* as an adverse party or in behalf of an adverse party in any matter connected with [the agent's] duties." *Id.* (emphasis added). And tellingly, the statute specifies that when union members bring suit under section 501, they do so "for the benefit of the [union]." *Id.* § 501(b).

Of course, to provide unions an implied cause of action, the statute must not only give them federal rights, but also reveal that Congress intended to give them a private remedy. Section 501 reveals just such an intent. The statute refers to the "refusal or failure by labor organization to commence proceedings," *id.*, which is most naturally read as suggesting that a union may bring proceedings under the statute. Similarly, the statute allows a suit by a union member "for the benefit of the [union]" only after the union "refuse[s] or fail[s] *to sue* or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so," *id.* (emphasis added), further

emphasizing Congress's understanding that unions have the capacity "to sue or recover damages or secure an accounting or other appropriate relief" regardless of state law.

Relying on these and other aspects of the statute, courts on both sides of the implied cause of action debate agree that union members' suits are analogous to shareholder derivative suits. *E.g.*, *International Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 287–88 (7th Cir. 2009) (using the analogy in a case finding an implied cause of action); *Building Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500, 506 (9th Cir. 1989) (using the analogy in a case finding no implied cause of action). But because shareholder derivative suits are brought on behalf of a corporation, such suits are typically allowed only after the corporation itself fails to bring suit on the same claims. *See Ward*, 563 F.3d at 288 (citing *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). "It would be anomalous indeed," the Seventh Circuit pointed out, "to read this statutory scheme as remitting the union's own suit—which is primary under the statutory hierarchy—to state court." *Id.* Moreover, this "anomalous" result "would create perverse incentives" for unions to forgo filing suit to "manufactur[e] federal jurisdiction" so that a member could bring a section 501(b) suit in federal court. *Id.* (internal quotation marks omitted).

Although even Faye, the district court, and the dissent all acknowledge that the statute envisions that unions will have some ability to pursue fiduciary duty claims against their agents directly, they insist that section 501 contemplates suits by unions only in state court for violations of state law. Appellee's Br. 5–6 ("Congress'[s] contemplation of a union's right to sue is, in fact, evident in the language of the statute. . . . [I]t is not necessary to look beyond the language [of the statute] to find that the statute does not convey an

express or implied private right of action for a union to sue in federal court."); *International Union, Security, Police & Fire Professionals of America v. Faye*, 115 F. Supp. 3d 40, 45 (D.D.C. 2015) ("Although the statutory language does reveal that Congress contemplated unions bringing suit in some forum, nothing in the statute suggests that Congress thought unions and union members required access to the *same* forum."); Dissenting Op. at 6 ("It is true that Congress assumed that unions would be able to bring suit to enforce the fiduciary duties imposed on union officers. But nothing in Subsection (b) suggests that Congress intended to allow unions to bring suit under *federal* law rather than under *state* law."). I disagree.

On this understanding of the statute, Congress intended to give union members a federal cause of action for violation of federal rights, but only when the union itself "refuse[d] or fail[ed]" to obtain relief in state court using state law, which may or may not overlap perfectly with the fiduciary duties imposed by section 501(a). This conception conflicts with the statutory description of the union member's suit as "for the benefit of the [union]," 29 U.S.C. § 501(b), as well as with the virtually uniform characterization of the union member's suit as a derivative suit ultimately belonging to the union itself. Far more likely to comport with congressional intent is the reading embraced by the Seventh and Eleventh Circuits. By creating federal rights and an express derivative federal cause of action for union members to bring "for the benefit" of the union—if the union does not itself "commence proceedings"—section 501 reveals Congress's intent that the union be able to enforce the duties its agents owe it in federal court.

The arguments advanced by Faye and embraced by the district court are unconvincing. First, Faye argues that section

501 must be construed narrowly because it is a jurisdictional statute. As noted above, however, Majority Op. at 4–5, the issue in this case goes to the merits, not jurisdiction.

Faye also argues that in enacting section 501, Congress was concerned that unions were refusing to enforce their rights in state court, not that state law provided unions with inadequate remedies. On this theory, Congress designed the statute to benefit union members suffering from union corruption, and we should therefore not read it to give the union itself a federal cause of action. *See also* Dissenting Op. at 5–7. Faye is correct that Congress recognized that state common law remedies were available to unions. But Congress apparently found these remedies inadequate and chose to address the problem in a particular way: by declaring federal duties the union agents owed the union and creating a federal remedial scheme that includes a derivative-like suit. Such a scheme obviously depends for its coherence on the ability of the union to control the suit that, after all, ultimately belongs to it.

I am also unpersuaded by the arguments advanced by my two colleagues. First, to be sure, as Judge Kavanaugh points out, "'where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.'" *Id.* at 5 (quoting *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 533 (1989)); *see also* Millett Concurring Op. at 4–5. But here, the textual and contextual evidence of statutory intent is strong, and the "additional remed[y]" consists merely of allowing the ultimate owner of a derivative claim to bring suit in its own name.

Similarly, because I read section 501 as reflecting congressional intent to create an implied cause of action, I am

untroubled that Congress also discussed "labor organization[s]" in various other provisions of the statute. Likewise, the inclusion of procedural prerequisites for union members bringing suits hardly suggests that unions are powerless to sue. Rather, I read section 501 as a whole as reflecting an intent to give unions an implied cause of action and the section 501(b) prerequisites as designed to prevent union members from hijacking lawsuits that unions themselves are willing to pursue. *See International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416, 1421 (11th Cir. 1996) ("Here, section 501(b) clearly shows that it has not one, but two purposes: first, to enable individuals to sue on the union's behalf, and second, to make sure that individuals do not preempt a union's right to prosecute its own claims."). This conclusion applies with equal force to the potentially jurisdictional statutory prerequisite that union members receive leave of court "for good cause shown" prior to bringing suit.

Finally, Judge Millett worries that "[a]llowing the union itself to take over enforcement of Section 501 rights would put back into the union's hands the very authority Congress sought to confer on individual members, and would empower corrupt unions to throw the Section 501 litigation or enter into sweetheart settlements." Millett Concurring Op. at 6. But that concern seems difficult to square with Congress's willingness to allow unions to foreclose suits by their members by "commenc[ing] proceedings" when requested. In other words, on any reading of the statute, Congress gave unions significant leeway to preempt fiduciary duty suits by their members. And even if Judge Millett is correct that "Section 501(b)'s 'good cause' standard protects the union member's right to bring a federal suit to enforce federal rights if litigation shenanigans by the union in state court trenched

upon the rights and duties declared by Section 501(a)," *id.* at 7 n.2, then the same standard would seem to protect against "litigation shenanigans" in federal court.

In sum, interpreting section 501 holistically and with due regard to both its text and its remedial structure, I am convinced that in enacting the LMRDA, Congress intended to allow the union to itself bring suit for violation of the federal rights Congress "declared" in section 501(a).

One final note. Faye's reading of the statute becomes even less tenable when this court's interpretation of section 501 in *Weaver* is layered on top of it. Even if *Weaver* did not control here, it holds at least that a union may take over a suit properly brought by a union member under section 501. Faye's position would thus suggest that the union has no ability to bring a federal suit in the first instance, but could displace its members and proceed to litigate the members' suit against its agents in federal court. I would not read section 501 as creating such a counterintuitive scheme.

MILLETT, *Circuit Judge*, concurring: The issue in this case sounds simple: can a union file suit as a plaintiff to enforce the fiduciary duties Congress declared in 29 U.S.C. § 501? But the answer is hard, lying at the intersection of important questions about the binding reach of circuit precedent, statutory construction, and constitutional avoidance. At bottom, I agree that *Weaver v. United Mine Workers of America*, 492 F.2d 580 (D.C. Cir. 1973) (per curiam), directs our disposition of this case, for the reasons so well explained by the majority opinion. I write separately to explain further my conviction that *Weaver* controls notwithstanding the arguments made in the dissenting opinion, and yet to acknowledge the force of the arguments against *Weaver*'s correctness, as well as to note the potential constitutional problems the issue raises.

## A

A panel of this court is bound to adhere to the holdings of prior circuit precedent even if we might resolve the case differently were we to decide it in the first instance. *See United States v. Kolter*, 71 F.3d 425, 431 (D.C. Cir. 1995) (We are "bound by [an earlier] decision even if we d[o] not agree with it[.]"); *cf. Hilton v. South Carolina Public Railways Comm'n*, 502 U.S. 197, 198 (1991) (The principle of *stare decisis* is "most compelling" in statutory interpretation cases.).

*Weaver*'s holding alone would seem to end this case because this court explicitly ruled there that a union may, on its own, prosecute as plaintiff an action to enforce the federal rights created by 29 U.S.C. § 501(a). *Weaver*, 492 F.2d at 586–587. The union in this case seeks to do the same thing: to prosecute an action to enforce the rights under Section 501(a) as the sole plaintiff. Asked and answered by *Weaver*.

And *Weaver*'s influence does not stop there. As the majority opinion notes, we are bound not just by the bottom-line holding of *Weaver*, but also by "those portions of the opinion necessary to that result." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996). The analysis on which the *Weaver* court predicated its holding seals the precedential deal.

Specifically, the *Weaver* court held that the union could be the sole plaintiff enforcing rights conferred by Section 501(a) by analyzing the statutory structure, and explaining how, under Section 501, the union "retain[ed] the primary interest in the litigation." 492 F.2d at 586. That was not just a procedural judgment. Rather, *Weaver* declared specifically that, given the union's desire "to prosecute vigorously the action brought for its benefit, it must be accorded that *right*." *Id.* (emphasis added). The only "right" the *Weaver* court could have recognized in that sentence was a right of action under Section 501(a). That, in fact, is what *Weaver* tells us in the preceding two sentences that describe "that right":

> Congress expressed its preference that the union prosecute a claim for breach of fiduciary duty against union officials. Allowing the [union] to assume the prosecution of this cause would further that legislative preference.

*Id*.; *see also id.* ("The mere fact that individual members have initiated the action does not prohibit the [union] from * * * taking the offensive in its prosecution."). Thus, contrary to the claim in the dissenting opinion, *see* Dissenting Op. at 11, the *Weaver* court did not just have "thoughts" about whether Section 501 confers a right of action on unions; *Weaver* expressly acknowledged and directly enforced the union's "right" "to prosecute * * * the action" as plaintiff, 492 F.2d at 586.

Finally, unless the *Weaver* court specifically determined that the union had the lawful authority to independently enforce the rights conferred by Section 501(a), there would have been no basis for *Weaver*'s separate holding that arguments about whether other would-be plaintiffs could sue were moot. 492 F.2d at 587 ("[W]hether the action survived the death of the only plaintiff who complied with the prerequisite to a Section 501(b) suit [] has become academic."); *id.* at 586 (noting union argument that, if the union "itself may assume the litigation as party-plaintiff," that would "moot" the dispute over whether other plaintiffs could continue the lawsuit). There thus is nothing "lurk[ing]," *see* Dissenting Op. at 11, about *Weaver*'s express holding that the union's right to bring suit as plaintiff legally moots the question of whether other would-be plaintiffs can prosecute the action.

The dissenting opinion would cast all of that aside for two reasons. First, that opinion describes *Weaver* as "completely miss[ing] the issue of whether Section 501 creates an implied cause of action for unions." Dissenting Op. at 10. But *Weaver* specifically discussed how the union's "right" to sue "further[ed] th[e] legislative preference," 492 F.2d at 586. That the panel did not go on to "cite any precedent related to finding implied causes of action," Dissenting Op. at 9, or to use a particular—and at that time rarely used—linguistic formulation is irrelevant to whether the prior panel holding binds us.[1]

Second, the dissenting opinion claims that *Weaver*'s holding was limited to the narrow factual circumstance before that court: whether a union could "start on one side of a

---

[1] This court first employed the "implied cause of action" phraseology three years after *Weaver*. *See Mason v. Belieu*, 543 F.2d 215, 220 (D.C. Cir. 1976).

Section 501 case and then—midway through—switch to the other side." Dissenting Op. at 9. It certainly is true that the facts of *Weaver* differed from those here. Thankfully, we do not often encounter cases where the defendant orchestrates the murder of the plaintiff, has a change of heart, and then seeks to substitute itself as plaintiff in the litigation. But those tragic facts played no role in the *Weaver* court's controlling *legal analysis* as to why the union could sue as plaintiff. *Weaver* instead relied upon the legal "right" of the union to prosecute the action, because it had the "primary interest in the litigation" and because "Congress expressed its preference" for that action in the design and structure of the statute. 492 F.2d at 586.

Indeed, what else could *Weaver* have meant? Surely it does not mean that persons who otherwise lack a right of action to enforce statutorily conferred rights can suddenly acquire such a right if they just murder the proper plaintiff and then step into the vacuum to prosecute the suit on their own behalf. I am not wont to impute such a bizarre holding to a prior panel.

**B**

Were it not for *Weaver*, I might very well agree with the dissenting opinion that no right of action can be implied here. While Judge Tatel's concurring opinion ably articulates the best arguments for implying such a right, in my mind four considerations weigh heavily against that conclusion.

First, Congress spelled out in Section 501 precisely the cause of action it wanted to create, along with specific conditions and limitations on the action. I am not aware of any case in which either this court or the Supreme Court has implied a right of action for one party where Congress expressly bestowed that right on a different party and on different terms. Given that the bottom-line inquiry is whether

"evidence anywhere in the text \* \* \* suggest[s] that Congress intended to create a private right," *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001), the better course in this case would be to assume that Congress said what it meant and meant what it said when it specifically designed the cause of action it thought best to enforce Section 501(a).

Second, at every turn, the statutory text weighs against judicially implying a cause of action. To begin with, it is not as though Congress just overlooked unions as potential parties. Unions—"labor organizations"—are referenced all over Section 501. Section 501 reflects a deliberate effort by Congress to declare fiduciary duties owed to *unions*, and a corresponding right to enforce them that was consciously *not* vested in the unions, but was designed to be entirely separate and independent of those organizations.

On top of that, it seems textually impossible to shoehorn union-plaintiffs into the statute as Congress wrote it. Section 501(b) repeatedly refers to the authorized plaintiff as a "member" of the labor organization in describing who may sue and how, as well as who can obtain attorneys' fees and costs. 29 U.S.C. § 501(b). Needless to say, a union is not a member of itself. The statute also requires a plaintiff, before filing suit, to establish that the union itself "refuse[d] or fail[ed] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization." *Id.* The suit that Section 501(b) references there is a suit by the union under extant state-law causes of action—such as fraud, breach of contract, breach of fiduciary duty, and unjust enrichment, all of which long predated Section 501. *See, e.g.*, H.R. Rep. No. 741, 86th Cong., 1st Sess. 81 (1959), *reprinted in* 1 NLRB Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 839 (1959). Suing unions, by definition, cannot establish their own failure to bring suit.

To allow unions to sue as plaintiffs under Section 501, courts would have to shrug off those textual preconditions. But that would amount to defying, not implying, a statutory cause of action.

Third, there was good reason for all the procedural fences Congress erected against unions as plaintiffs: the whole point of Section 501 was to empower individuals to combat union corruption. *See Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 777 (D.C. Cir. 1984) (describing Congress's attempt "to end 'autocratic rule by placing the ultimate power in the hands of the members, where it rightfully belongs, so that they may be ruled by their free consent, [and] may bring about a regeneration of union leadership'") (quoting 105 Cong. Rec. 6472 (1959) (remarks of Sen. McClellan), *reprinted in* 2 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1099 (1959)).

Allowing the union itself to take over enforcement of Section 501 rights would put back into the union's hands the very authority Congress sought to confer on individual members, and would empower corrupt unions to throw the Section 501 litigation or enter into sweetheart settlements. *Weaver* itself seemed to acknowledge that risk because the court went out of its way to find that the union's efforts to proceed as plaintiff in that case were not in "bad faith" and did not entail any "conflict of interest." 492 F.2d at 586. Indeed, suspicions about unions absolving corrupt officials are presumably what led Congress to outlaw "general exculpatory" union bylaws and resolutions that would otherwise purport to relieve officers of the fiduciary duties that Section 501(a) declared. 29 U.S.C. § 501(a). It would make little sense to empower unions to accomplish through

litigation tactics what Congress forbade through other union processes.[2]

Fourth, the statute requires would-be plaintiffs to obtain leave of the court "for good cause shown" before filing suit. 29 U.S.C. § 501(b). That provision appears similar to certificates of appealability that many habeas petitioners must obtain before filing suit. *See* 28 U.S.C. § 2253(c). The certification procedure in habeas cases is jurisdictional. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012). If Section 501(b)'s pre-litigation certification likewise is "jurisdictional"—as Congress labeled it in the heading to Section 501(b)—then implying a right of action that bypasses Section 501(b)'s "good cause" limitation (as the record suggests the union did here) would require courts to create their own jurisdiction under Section 501, not just a right of action. Courts absolutely cannot do that. *See Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction.") (citing U.S. Const., Art. III, § 1).

Accordingly, if we were writing on a clean slate, the relevant indicia of statutory intent would, in my view and as well explained by the dissenting opinion, weigh heavily against implying a right of action for unions to prosecute lawsuits under Section 501.

---

[2] Judge Tatel's concurring opinion suggests that the union could equally frustrate an individual member's suit under Section 501 by collusively litigating its state-law cause of action. *See* Concurring Op. at 6. But Section 501(b)'s "good cause" standard protects the union member's right to bring a federal suit to enforce federal rights if litigation shenanigans by the union in state court trenched upon the rights and duties declared by Section 501(a).

**C**

Having said all of that, one thing would still give me pause about denying a union the right to sue under Section 501: Unless the union can sue, the enforcement scheme that Congress devised could potentially run into some constitutional headwinds.

For starters, Congress is clear that the fiduciary duties in Section 501(a) belong to the union, and to that end provides that any recovery also goes to the union itself. *See, e.g.*, 29 U.S.C. § 501(a) (declaring duties of union officials and agents to "hold [the union's] money and property solely for the benefit of the organization and its members"); *id.* § 501(b) (authorizing suit "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization"). The ability of Congress to empower a third party—someone completely outside of the union's control—to independently enforce and definitively adjudicate the union's own rights would seem to raise due process concerns. *Cf. Taylor v. Sturgell*, 553 U.S. 880, 896 (2008) ("[A] special statutory scheme may 'expressly foreclose successive litigation by nonlitigants *if the scheme is otherwise consistent with due process*.'") (quoting *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)) (emphasis added) (alterations omitted).

It bears noting, in that regard, that individual member suits under Section 501(b) do not map exactly onto the shareholder derivative model referenced in *Weaver*, 492 F.2d at 586 & n.27, and Judge Tatel's concurrence, Concurring Op. at 3. That is because stockholders actually own a portion of the corporation and thus have individual property interests in corporate breaches of fiduciary duties. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 318 (1936) (Shareholders may bring a derivative suit because, "[w]hile their stock holdings are small, they have a real interest[.]"); *see also* 13 Fletcher Cyclopedia of the Law of Corporations

§ 5972 (2015) ("[O]ne who does not own shares in a corporation is not qualified to bring a derivative action in its name.").

Individual union members, by contrast, have no property interest in the union, and the broad fiduciary duties that Section 501(a) vindicates generally run to the union and union membership *as a whole*, rather than to individual union members.[3] Construing the statute to permit unions to vindicate their Section 501(a) rights themselves should they choose to do so might arguably ameliorate the constitutional concern. *See Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 528–529 (1993) ("Federal statutes are to be so construed as to avoid serious doubt of their constitutionality.") (quoting *International Ass'n of Machinists v. Street*, 367 U.S. 740, 749–750 (1961)).

On top of that, the ability of individual union members to sue in federal court to enforce the union's legal rights—based on injuries inflicted only on the union or the membership as a whole and to obtain a recovery that runs 100% to the union—may raise an Article III standing question. *See Vermont Agency of Natural Resources v. United States ex. rel. Stevens*, 529 U.S. 765, 771 (2000) ("The Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*.") (quoting *Warth v. Seldin*, 422 U.S. 490,

---

[3] *See* 29 U.S.C. § 501(b) (recovery is solely for the benefit of the organization as a whole); *see also, e.g.*, *Agola v. Hagner*, 556 F. Supp. 296, 301 (E.D.N.Y. 1982) (complaint under Section 501 failed to state a claim because the suit was "for the benefit of individual plaintiffs and not for the benefit of a labor organization"); *cf. Goolsby v. City of Detroit*, 358 N.W.2d 856, 863 (Mich. 1984) (common-law duty of fair representation means that the union "must be faithful to each member, to be sure, but * * * must be faithful to all of the members at one and the same time").

499 (1975)) (emphasis in *Vermont Agency*). However, construing the statute to treat the union as the real party in interest and the individual litigant as something akin to an assignee for collection could—perhaps—reduce those concerns. *See Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 285 (2008) ("Lawsuits by assignees * * * are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'") (quoting *Vermont Agency*, 529 U.S. at 777–778).

In sum, I find the statutory construction question legally betwixt and between, with text, structure, and purpose pointing against recognizing an implied right of action, and the principle of constitutional avoidance pointing in the other direction. *Weaver*, however, forestalls that difficult debate for now.

KAVANAUGH, *Circuit Judge*, dissenting: The Security, Police & Fire Professionals of America is a labor union that represents security personnel throughout the United States. From 2004 to 2009, the Union employed Assane Faye as the District Director of its office in Washington, D.C. The relationship did not go well. The Union contends that Faye was not a loyal union officer. According to the Union, Faye endeavored to establish a rival union and misused the Union's resources to achieve that goal.

The Union sued Faye in U.S. District Court for violating his fiduciary duties to the Union. The Union sued under the federal Labor-Management Reporting and Disclosure Act and under D.C. law. According to Faye, however, the federal Act does not create a cause of action for a union to sue its former officer. Faye argued that the Union therefore could sue him only under D.C. law. The District Court agreed with Faye.

The majority opinion reverses the judgment of the District Court and allows the Union to maintain its federal claim against Faye. I respectfully dissent because unions do not possess a federal cause of action to sue their officers for breaches of fiduciary duties.

I

A

In 1959, Congress passed and President Eisenhower signed the Labor-Management Reporting and Disclosure Act. *See* 29 U.S.C. § 401 *et seq.* Congress was concerned about growing instances "of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" on the part of union officers. *Id.* § 401(b). By enacting this statute, Congress sought to deter those problems, in part by making corrupt union officers civilly liable to union members.

Section 501 of the Act sets forth the civil liability scheme. Subsection (a) of Section 501 imposes fiduciary duties on "officers, agents, shop stewards, and other representatives" of the union. *Id.* § 501(a). (I will use the term "officers" to refer collectively to those individuals.) Under the Act, union officers must manage the "money and property" of the union "solely for the benefit of the organization and its members." *Id.* The union officers must also remain loyal to the union and refrain from any self-dealing. *See id.*[1]

Subsection (b) of Section 501 gives individual union members a federal cause of action in order to enforce the fiduciary duties created by Subsection (a). Any "member of the labor organization" may sue a union officer violating

---

[1] Subsection (a) reads in full: "The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

Subsection (a) "in any district court of the United States" in order "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." *Id.* § 501(b).[2]

Because suits brought by union members under Subsection (b) are "for the benefit of the labor organization," *id.*, they are derivative suits. A union member therefore may bring suit under Subsection (b) only after meeting two procedural prerequisites. First, the union member may sue under Subsection (b) only after the union itself "refuse[s] or fail[s] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so." *Id.* Second, the union member must acquire "leave of the court obtained upon verified application and for good cause shown." *Id.* If a union member meets those procedural prerequisites, Subsection (b) provides the

---

[2] Subsection (b) reads in full: "When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

union member a cause of action to file suit against a union officer.

But Subsection (b), by its terms, does not give a *union* – as opposed to union members – a cause of action. That statutory silence has precipitated a circuit split. The Seventh and Eleventh Circuits have held that unions have an implied cause of action under Section 501. *International Union of Operating Engineers, Local 150 v. Ward*, 563 F.3d 276 (7th Cir. 2009); *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416 (11th Cir. 1996). The Ninth Circuit, by contrast, has held that unions do not have an implied cause of action under Section 501. *Building Material and Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500 (9th Cir. 1989). This case requires us to enter the fray.

## B

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress," not the Judicial Branch. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Courts must therefore be "reluctant" to "provide a private cause of action where the statute does not supply one expressly." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004). Courts may find an implied cause of action only if they determine that the statute "displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286.

Applying the Supreme Court's precedents regarding implied causes of action, I would conclude that Section 501 does not create an implied cause of action for unions.

To begin with, the text is clear. Subsection (b) of Section 501 creates a cause of action for union *members*. It does not create a cause of action for *unions*.

Indeed, the text of Section 501 strongly suggests that Congress did *not* want unions to have a federal cause of action. It is "an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 533 (1989) (citation omitted); *see also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19-20 (1979); *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458 (1974). After all, "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Here, Congress chose to create a cause of action, but only for union members and not for unions. That decision strongly suggests that Congress intended to allow union members – and only union members – to sue under Section 501. We should respect that congressional choice.

To be sure, some broader conceptions of statutory intent take account not just of the text of the statute, but also of legislative history. But here, the legislative history supplies *zero* indication that Congress wanted to create a federal cause of action for unions.

As Judge Millett's concurrence explains in convincing detail, moreover, other contextual indications in this statutory scheme make it all but "impossible to shoehorn union-plaintiffs into the statute as Congress wrote it." Millett Concurring Op. at 5. Notably, as far as anyone is aware, the Supreme Court has never found an implied cause of action for

one party to sue under a particular statute when Congress expressly created a cause of action for another party to do so. We should not start now.

With no text and no legislative history to support its argument, the Union relies heavily on the fact that union members may not bring suit under Subsection (b) until the union has refused or failed to do so itself. Subsection (b) therefore assumes that a union *could* have brought suit. According to the Union, Congress therefore must have intended to give unions a federal cause of action to enforce Section 501. *See also Ward*, 563 F.3d at 287-88.

But the conclusion does not follow from the premise. It is true that Congress assumed that unions would be able to bring suit to enforce the fiduciary duties imposed on union officers. But nothing in Subsection (b) suggests that Congress intended to allow unions to bring suit under *federal* law rather than under *state* law. When Congress enacted Section 501, it knew that unions already had state-law causes of action available to them. *See* Tatel Concurring Op. at 5; *see also* H.R. Rep. No. 86-741, at 81 (1959) (supplementary views). But at the time, the States generally did not provide causes of action to *union members* in order for them to sue corrupt union officers. *See* S. Rep. No. 86-187, at 72 (1959) (minority views); *Statham*, 97 F.3d at 1420. That disparity generated a problem: Although unions could sue their officers under state law, the unions were sometimes choosing not to do so for corrupt reasons – in part because the officers of the union usually determined whether a union should sue. *See generally Phillips v. Osborne*, 403 F.2d 826, 828-29, 831-32 (9th Cir. 1968). And union members had no recourse because, as noted above, they generally could not sue the union officers under state law. To solve that problem, Congress enacted a new statute affording union members a

federal cause of action to sue crooked union officers when a union itself would not. But Congress did not need to allow unions to sue under federal law because unions, unlike union members, already could bring suit against union officers under state law. And so Congress did not need to – and did not – create a new federal cause of action for unions.

Sticking to the statute as Congress wrote it does not leave unions without remedies. To reiterate, they have state-law remedies. This suit demonstrates as much. In addition to the federal claim, the Union brought a host of other claims against Faye under D.C. law. Those claims include conversion and breach of contract, along with a claim for breach of fiduciary duties imposed by D.C. law. *See* Complaint at 4-6, *International Union, Security, Police and Fire Professionals of America v. Faye*, No. 09-2229 (D.D.C. Nov. 24, 2009), at Joint Appendix 8-10. In other words, even without a federal cause of action under Section 501, unions can still hold union officers accountable, including in this very case, but the unions must do so under state law.

Creating a federal cause of action for unions may or may not be "desirable" as a matter of policy. *Sandoval*, 532 U.S. at 287. But Congress did not create one in the Labor-Management Reporting and Disclosure Act, and we must respect Congress's policy choice.

## II

The majority opinion sidesteps the merits of the Union's argument. Instead, the majority opinion says this Court already decided the issue in *Weaver v. United Mine Workers of America*, 492 F.2d 580 (D.C. Cir. 1973) (per curiam). In so ruling, the majority opinion ventures far beyond both the arguments of the parties in this case and the holding of *Weaver* itself.

8

To start, even the Union here does not rely on *Weaver* to support its arguments. Think about that. In its opening brief, the Union did not rely at all on *Weaver*. *See* Union Br. 13. At oral argument, the Union was offered *Weaver* on a silver platter. *See* Tr. of Oral Arg. at 8. But the Union declined to indulge. In no uncertain terms, the Union said it would be too much of a reach to argue that *Weaver* had any relevance here: "[G]iven th[e] rather unique circumstance of that case," the Union explained at oral argument, *Weaver* "does not directly address the issue before this Panel." Tr. of Oral Arg. at 8-9. Again, remember that this was *the Union* speaking. Even the Union did not think it could make a good argument that *Weaver* controlled this case.

The Union expressly waived reliance on *Weaver* for good reason. As the Union acknowledged in its brief and at oral argument, the facts in *Weaver* presented a far different set of legal issues, and the *Weaver* Court quite plainly did not address much less resolve the question now before us.

*Weaver* involved a Section 501 suit brought by Joseph Yablonski, a member of the United Mine Workers of America. *Weaver*, 492 F.2d at 581-82. Yablonski believed that the union's senior officers had been misappropriating union funds. *Id.* at 582. So along with other members of the union, Yablonski sued three union officers and the union itself under Subsection (b) of Section 501. *Id.* at 581-82. Simple enough. But Yablonski and his family were murdered on the order of the union's president before the court could reach the merits of Yablonski's suit. *Id.* at 582; *see also Commonwealth v. Boyle*, 447 A.2d 250 (Pa. 1982).

That created a potential problem for the pending suit. Of the plaintiff union members in the suit, only Yablonski had met the procedural demand requirement for suit under

Subsection (b). *Weaver*, 492 F.2d at 582. So the defendant union officers and union moved to dismiss the suit, arguing that the remaining plaintiffs were not proper plaintiffs. *Id.* The District Court denied the motion, and the defendant union officers and union filed interlocutory appeals. *Id.*

While the appeals were pending, the union held a new election, and control of the union flipped: The election displaced the incumbent officers and ushered Yablonski's supporters into power. *Id.* at 582-83. With its newly elected officers at the helm, the union asked this Court (i) to withdraw the union's appeal, in which the union had been aligned with the old defendant union officers, and (ii) to permit the union to now intervene on behalf of the plaintiff union members against the old defendant union officers. *See id.* at 583.

The question before the *Weaver* Court was thus a narrow one: Generally speaking, could a union start on one side of a Section 501 case and then – midway through – switch to the other side? *See id.* at 586. *Weaver* held that a union could do so. *Id.* at 586-87. In a brief discussion, the Court noted that the union had chosen "to assume a defensive role" in the suit initially, and that the defendant officers wanted this Court to "compel the [union] to maintain [that] defensive role." *Id.* at 586. But the Court declined to force the union to stick to its original position, noting that the union was "at liberty to shape its own destiny within the boundaries set by law." *Id.* The Court held that "like any labor organization," the union "is free to say which side of a controversy involving a legitimate institutional interest it will take." *Id.*

Importantly for present purposes, *Weaver* completely missed (and thus said nothing about) the issue of whether

Section 501 creates an implied cause of action for unions.[3] *Weaver* did not cite any precedent related to finding implied causes of action. Nor did *Weaver* purport to analyze whether the union in that case could have brought a Section 501 claim in the first instance. Indeed, *Weaver* did not mention Section 501 at all other than a passing reference to the "legislative preference" for unions themselves to prosecute claims "for breach of fiduciary duty against union officials." *Id.* That silence should not be surprising: As the Union in this case observes, the Court in *Weaver* "took for granted that the Union was a proper party." Union Br. 13. Therefore, as the Union here concedes, "the decision in *Weaver* turned on an issue of civil procedure, not an interpretation of § 501." *Id.*

The majority opinion extracts a different lesson from *Weaver*. With considerable understatement, the majority opinion acknowledges that "*Weaver* did not squarely address the precise question of a union's right to bring a section 501 suit in the first instance." Maj. Op. at 10. But the majority opinion nonetheless claims that *Weaver* "compels the conclusion" that a union may bring suit under Section 501. *Id.* The majority opinion reasons that by "allowing the union to take over control of the litigation, the *Weaver* court necessarily determined that the union was a proper plaintiff in a section 501 fiduciary duty suit." *Id.* at 9.

*Weaver* said nothing of the sort. Simply put, the *Weaver* Court missed a critical issue, presumably because the parties (in particular, the defendant union officers) failed to notice and raise it and because the issue was not the kind of jurisdictional issue that courts must raise on their own. It

---

[3] It is unclear why the union rather than the union officers was originally a proper defendant in a case of this sort, much less a proper plaintiff after the switch. But neither question was addressed in the multi-stage litigation.

therefore is entirely mistaken to think that the *Weaver* Court had any thoughts or made any rulings on the issue before us. The majority opinion's contrary conclusion contravenes a longstanding principle of judicial precedent: "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 n.7 (D.C. Cir. 1996) (en banc); *see also United States v. Shabani*, 513 U.S. 10, 16 (1994).

For its part, Judge Millett's concurrence says that the question presented here was "[a]sked and answered by *Weaver*." Millett Concurring Op. at 1. That is doubly mistaken, in my view. Review of the *Weaver* opinion reveals that this question was neither asked nor answered. The court simply missed the issue. That happens sometimes. Even in our court. *Cf. Dietz v. Bouldin*, 136 S. Ct. 1885, 1896, slip op. at 12 (2016) ("All judges make mistakes. (Even us.)"). I would not impute to the *Weaver* Court rulings that it quite obviously never made.

\* \* \*

This Court's decision in *Weaver* does not control the outcome of this case, as even the Union has conceded. To come to the contrary conclusion, the majority opinion has not only re-engineered *Weaver*, but also jumped past the Union's commendable, good-faith candor in refusing to rely on that inapposite case. Because *Weaver* does not control here and because Section 501 does not create a cause of action for unions, I would affirm the judgment of the District Court

dismissing the Union's federal cause of action. I respectfully dissent.[4]

---

[4] The District Court dismissed for lack of subject matter jurisdiction. As the majority opinion notes, because the Union has an *arguable* cause of action, our inquiry "goes to the merits, not jurisdiction." Maj. Op. at 5; *see also Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4, slip op. at 9 n.4 (2014). But when a district court dismisses for lack of subject matter jurisdiction, this Court can "nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006). I would do so here.